## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **V.** | ) **CRIMINAL NO.** <u>3:14cr12</u> |
| | ) |
| **ROBERT F. MCDONNELL** | ) |
| **MAUREEN G. MCDONNELL** | ) |

## DEFENDANT ROBERT F. MCDONNELL'S MOTION #2
## MOTION SEEKING IMMEDIATE DISCOVERY OF ALL
## EXCULPATORY AND IMPEACHMENT EVIDENCE PURSUANT TO
## *BRADY V. MARYLAND* AND ITS PROGENY

Robert F. McDonnell, through undersigned counsel, respectfully moves the Court, pursuant to the Due Process Clause of the Fifth Amendment to the Constitution of the United States of America and Federal Rule of Criminal Procedure 16(a)(1)(E), for discovery of all relevant exculpatory and impeachment evidence in the Department of Justice's possession, custody, or control.  The grounds for this motion are set forth in the accompanying memorandum.

Dated: January 2, 2014                    Respectfully submitted,


                                          /s/ John L. Brownlee
                                          John L. Brownlee (VSB No. 35378)
                                          Holland & Knight LLP
                                          800 17th Street N.W., Ste. 1100
                                          Washington, DC 20006
                                          Telephone: (202) 828-1854
                                          Facsimile: (202) 955-5564
                                          Email: john.brownlee@hklaw.com

                                          Henry W. Asbill (*pro hac vice pending*)
                                          Jones Day
                                          51 Louisiana Avenue, N.W.
                                          Washington, DC 20001
                                          Telephone: (202) 879-3939
                                          Facsimile: (202) 626-1700
                                          Email: hasbill@jonesday.com

                                          *Counsel for Governor Robert F. McDonnell*

## **CERTIFICATE OF SERVICE**

I certify that on January 21, 2014, I caused to be served a true copy of the foregoing via

electronic email on the following individual:

> AUSA Michael S. Dry
> United States Attorney's Office
> 600 E. Main Street, Suite 1800
> Richmond, Virginia 23219-2447
> Phone: (804) 819-5400
> Facsimile: (804) 771-2316
> Email: michael.s.dry@usdoj.gov


Dated: January 21, 2014                          Respectfully submitted,


                                                 /s/ John L. Brownlee
                                                 John L. Brownlee (VSB No. 35378)
                                                 Holland & Knight LLP
                                                 800 17th Street N.W., Ste. 1100
                                                 Washington, DC 20006
                                                 Telephone: (202) 828-1854
                                                 Facsimile: (202) 955-5564
                                                 Email: john.brownlee@hklaw.com

                                                 *Counsel for Governor Robert F. McDonnell*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **V.** | ) | **CRIMINAL NO.** <u>3:14cr12</u> |
| | ) | |
| **ROBERT F. MCDONNELL** | ) | |
| **MAUREEN G. MCDONNELL** | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT ROBERT F. MCDONNELL'S MOTION #2 SEEKING IMMEDIATE DISCOVERY OF ALL EXCULPATORY AND IMPEACHMENT EVIDENCE PURSUANT TO *BRADY V. MARYLAND* AND ITS PROGENY

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 3

I.      The Defense Has Reason To Believe That The Prosecution Does Not Appreciate
The Scope Of Its Obligations Under Brady .................................................................. 3

II.     Prompt Disclosure Of All Brady Material Is Warranted ..................................................... 5

     A.      The Circumstances Warrant Prompt Production of Brady Material...................... 5

     B.      Prompt Production Of Certain Brady Material Is Particularly Warranted ........... 7

CONCLUSION ................................................................................................................... 9

## INTRODUCTION

In criminal proceedings, the prosecution is obligated to disclose all evidence in its possession, custody, and control that could suggest a defendant's innocence. Federal Rule of Criminal Procedure 16 provides that the prosecution must provide all documents "material to preparing the defense" upon "request." Fed. R. Crim. P. 16(a)(1)(E)(i). *Brady v. Maryland*, moreover, holds that a prosecutor violates due process when he suppresses evidence that is favorable to the defendant and that could shed light on the defendant's guilt or innocence. 373 U.S. 83, 87 (1963). This extends to evidence that bears upon the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). Because the prosecution's investigatory powers far outstrip those of the defense, this obligation is at the heart of our criminal justice system. It is a basic component of the prosecutor's obligation not simply to "win a case," but rather to ensure "that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

The prosecutors do not get to decide for themselves what is "material" or what evidence the defense (and the Court and the jury) really ought to know about. As the District of Columbia District Court has explained, the Constitution does not "permit[] prosecutors to withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the outcome of the trial." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). The prosecutors are plainly not "neutral (nor should they be) nor prescient, and any such judgment necessarily is speculative on so many matters that simply are unknown and unknowable before trial begins." *Id.* Therefore, "the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial." *Id.* The question is "whether the evidence is favorable"; "if so, it must be disclosed

without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *Id.* "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Id.* at 17.

Here, the defense has reason to believe that the federal government's lead prosecutor in this proceeding possesses an improperly narrow view of these disclosure obligations. As explained in detail below, during the investigation leading to this proceeding—an investigation during which the prosecutors discouraged witnesses from speaking to defense counsel—the defense unearthed critical exculpatory material that undercuts a key component of the government's factual theory as that theory has been previously explained. Yet when confronted with that evidence, the lead prosecutor expressed surprise that the defense would consider the evidence to be *Brady* material.

As the Chief Judge of the United States Court of Appeals for the Ninth Circuit recently noted, "[t]here is an epidemic of *Brady* violations abroad in the land." *United States v. Olsen*, Case Nos. 10-36063, 10-36064, Slip op. at 2 (Dec. 10, 2013) (Kozinski, C.J., dissenting from denial of rehearing en banc); *see also id.* at 14-15 (citing dozens of cases involving *Brady* violations).[1] The defense is committed to preventing this case from becoming another episode in this "epidemic." *Id.* This motion is therefore a prophylactic measure that seeks to involve the Court from the outset to protect the defense's vital interest in exculpatory evidence. Should the prosecution agree to promptly produce the below-requested information, however—and should it agree to produce every shred of evidence in its possession, custody, or control that is relevant to Governor McDonnell's defense—the defense will withdraw this motion.

---

[1] Available at http://tinyurl.com/nxjjcya.

## BACKGROUND

Defendant Robert F. McDonnell's Motion #1, which is being filed simultaneously, supplies the background for this filing.

## ARGUMENT

**I.     The Defense Has Reason To Believe That The Prosecution Does Not Appreciate The Scope Of Its Obligations Under *Brady*.**

Federal Rule of Criminal Procedure 16 provides that the prosecution must provide all documents "material to preparing the defense" upon "request." Fed. R. Crim. P. 16(a)(1)(E)(i). Moreover, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The government is therefore legally obligated to produce all relevant exculpatory and impeachment evidence in its possession, custody, or control "without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *Safavian*, 233 F.R.D. at 16. "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Id.* at 17. This is settled law.

So far, the prosecution has taken positions that suggest it does not understand the scope of this basic obligation. Throughout the investigation, one of the government's central theories has been that a small, private lunch hosted by the First Lady at the Governor's Mansion on August 30, 2011 was intended as payback to Mr. Williams. At this lunch, a Star Scientific affiliate announced the award of grant money to medical researchers at the University of Virginia and Virginia Commonwealth University. The lunch was organized by Mary Shea Sutherland, the First Lady's Chief of Staff.

The defense recently discovered evidence that directly contradicts the Government's theory. Specifically, the defense discovered that, at the same time Ms. Sutherland was organizing the lunch event at the Mansion, she was secretly planning to leave her government employment and return to a job at her former public relations firm, Benedetti & Farris. In anticipation of that move, Ms. Sutherland began seeking to ingratiate herself with Mr. Williams in order to obtain a lucrative consulting contract once she reentered the private sector. Shortly after meeting Mr. Williams in April 2011, Ms. Sutherland conducted discussions with a New York event planner about ideas for launching Star's latest product, Anatabloc. In July 2011, Ms. Sutherland flew on Mr. Williams' private plane to a Star event at Gibson Island in Maryland, telling a friend in confidence that she was making the trip in hopes of being hired by Star. This latter evidence directly contravenes the Government's claim that Ms. Sutherland attended the Gibson Island event as the First Lady's envoy in order to supply credibility to Star in its dealings with representatives from UVA and VCU, who were also in attendance.

Shortly after returning from Gibson Island, Ms. Sutherland placed the Mansion lunch on the First Lady's calendar and took the lead in organizing the event. One week before the lunch event, a proposed contract was secretly drafted pursuant to which Star would pay an annual retainer of $108,000 to Benedetti & Farris for Ms. Sutherland's consulting and event-planning services.[2] Two days after the Mansion lunch, Benedetti & Farris forwarded that proposed contract to Star. This evidence therefore shows that Ms. Sutherland—whom the Governor's Office had hired for the express purpose of providing guidance and protection to the Governor's

---

[2] *See* Ex. A (proposed $108,000 contract for Ms. Sutherland to be a "lead consultant for Star Scientific"); Ex. B (email withheld by prosecutors evidencing that Ms. Sutherland was discussing how to launch Star's Anatabloc product in April 2011).

spouse, a novice in the public arena—used  her position as Chief of Staff to the First Lady to pursue a personal agenda that she concealed from her employer.

Ms. Sutherland is a critical government witness and one on whose credibility the government's case depends.  Her efforts to close a personal deal with Mr. Williams directly undermine the government's claim that the Governor agreed to host a lunch at the Mansion in exchange for gifts or loans.[3]  This evidence is therefore precisely the sort of exculpatory evidence that the government is obligated to disclose, even if the prosecutors do not personally believe it is dispositive of Governor McDonnell's innocence.  Yet when the defense uncovered this evidence and asked the prosecutors to produce any similarly exculpatory evidence,  the prosecutors expressed skepticism that the evidence was exculpatory *at all*—asking the defense to "[p]lease explain your theory regarding exactly how the [contract] is 'obvious Brady material.'" October 31, 2013 Email from Assistant U.S. Attorney Michael Dry to John Brownlee, Ex. C. That statement reflects a serious misunderstanding of the government's disclosure obligations and may be a harbinger of future failures to disclose similarly exculpatory evidence—many of which the defense (or the Court) may never be fortunate enough to discover.

## II.    Prompt Disclosure Of All *Brady* Material Is Warranted.

### A.    The Circumstances Warrant Prompt Production of *Brady* Material.

The prosecution's overly narrow interpretation  of *Brady*—coupled with the legal and evidentiary gaps in the government's case detailed in Defense Motion #1—warrants expedited disclosure of Rule 16 material and *Brady* information.  When charges are hanging by a few threads, every thread counts and time is of the essence.  As Chief Judge Kozinski has observed,

---

[3] There is no allegation that the Governor or his staff had any role in proposing or organizing this event.   Indeed, the evidence shows that Ms. Sutherland circumvented the normal approval processes for such events.

"[d]ue to the nature of a *Brady* violation, it's highly unlikely wrongdoing will ever come to light in the first place," which "creates a serious moral hazard for those prosecutors who are more interested in winning a conviction than serving justice." *Olsen*, *supra*, Slip at 11. It is therefore imperative that the defense obtain prompt production of all exculpatory and impeachment material so that there is sufficient time for investigation to further corroborate the evidence and determine whether the prosecution is holding back any additional evidence—an ever-present possibility if a "prosecutor just [does] not take his constitutional duty to disclose exculpatory evidence very seriously." *Id.* at 12. Ample time is essential to ensure that no critical defense evidence slips through the cracks.

Prompt production is further warranted by the need to preserve all exculpatory evidence. In the course of uncovering the above-described evidence, the defense further discovered that the federal government has done nothing to preserve any of Benedetti & Farris's records—including emails—relating to Ms. Sutherland's and Benedetti & Farris's relationship with Star and Mr. Williams.[4] The government failed to preserve this critical evidence despite its having long known about Ms. Sutherland's backdoor dealings. The government's failure to preserve this evidence—which was quite possibly replete with exculpatory information—is itself an arguable *Brady* violation: The Constitution gives "the prosecutors [] *an affirmative duty* to search possible sources of exculpatory information . . . ." *Safavian*, 233 F.R.D. at 17 (emphasis added).

Given the zeal with which the federal government has sought evidence of guilt in this proceeding, there is little question that it would have taken pains to preserve these records and emails if it thought that they could help it obtain a conviction. The government's failure to preserve evidence when it tends to show innocence—rather than guilt—simply reinforces the

---

[4] The defense has been informed that Benedetti & Farris no longer exists and that many of its records were destroyed as part of its dissolution.

concern about the prosecution's willingness and ability to comply with *Brady*.  It also reinforces the need for expedited production.  The defense may need to take affirmative steps to preserve exculpatory evidence that the government is content to see deleted or otherwise destroyed as its investigation and prosecution proceeds.

### B.        Prompt Production Of Certain *Brady* Material Is Particularly Warranted.

There are several issues, in particular, on which the defense believes the government possesses critical material that should be promptly turned over.  *First*, given what has already come to light, it is imperative that the prosecution immediately disclose all evidence in its possession, custody, or control concerning Mrs. McDonnell's former Chief of Staff, Mary Shea Sutherland.  Given the evidence that Ms. Sutherland, while serving as a state employee, sought to leverage her access to the McDonnells and the Mansion to obtain a lucrative consulting contract with Mr. Williams, it is important to know whether the government has agreed to immunize Ms. Sutherland from potential criminal liability for this conduct (or any other conduct).   It is similarly important to know whether the government possesses any other impeachment information concerning Ms. Sutherland and her interactions with Mr. Williams.  If, as the available evidence suggests, Ms. Sutherland was the driving force behind events that the government has focused upon (such as the Mansion lunch), that is plainly exculpatory.

*Second*, the Court should order the expedited disclosure of all immunity deals or informal understandings the government has reached with Mr. Jonnie Williams.  It is the defense's understanding that the government has granted blanket immunity to Mr. Williams for his gifts to various public officials, and that any further investigation of Mr. Williams for tax and securities fraud has been put on indefinite hold.  The defense further understands that the Food and Drug Administration is investigating certain claims by Star Scientific (and possibly Williams) about the alleged health benefits of Star products—an investigation that could potentially result in

federal criminal liability for Mr. Williams. Because immunity from prosecution for such a wide range of federal crimes could dramatically influence Mr. Williams' testimony, prompt disclosure of that information is essential. The government should also confirm whether it has ceased its investigation into Mr. Williams for securities fraud, tax fraud, and improper drug marketing, while explaining whether its decision to cease those investigations was motivated to any degree by the government's reluctance to uncover additional evidence that could impeach Mr. Williams' credibility when he testifies against Governor McDonnell, or by a desire to signal to Mr. Williams that, as a practical matter, his immunity extends to much more than his alleged public corruption. Our request includes production of all drafts of all immunity agreements, all correspondence between government counsel and counsel for Mr. Williams, and, at the least, a summary of all conversations between those counsel. It is important for counsel to understand the initial demands of the government and how the ultimate bargain was struck.

*Third*, the Court should order the government to immediately turn over all FBI 302s, grand jury testimony, and other interview notes or memoranda within its possession. The government's case hinges almost exclusively on witness testimony and the defense understands that virtually every witness the government has interviewed has told the government exculpatory things about the Governor or negative things about the government's key witnesses. All evidence concerning that testimony is thus necessary for the Governor to prepare his defense.

The federal government's actions thus far demonstrate the need for immediate disclosure of this witness-interview evidence. During the investigation of its charges, the government took the position that it could contact members of the Governor's staff *ex parte*, despite their representation by counsel appointed by the Attorney General and paid for by Virginia taxpayers. The government relented from this questionable position only when the Governor's Office

acceded to the government's demands to appoint new counsel for the Governor's staff, also paid for by Virginia taxpayer funds.[5]  And even since that time, the defense understands that the federal government has employed heavy-handed tactics in its interviews with staff to discourage them from exercising their right to speak with the defense.  Given that the federal government appears to have used its considerable powers to prevent the defense from knowing what witnesses are saying, it is imperative that the government's records of all witnesses' statements are promptly disclosed.[6]

*Fourth*, the Court should order the government to immediately disclose all material regarding the financial institutions' treatment of the Governor's loan applications and financial statements, as well as all material regarding the Governor's financial status.  The indictment's allegations that the Governor made false statements to a financial institution are susceptible to dismissal because there is no evidence that the Governor intended to report false information with the purpose of influencing the institution's decision whether to extend a loan to the Governor or one of his LLCs.  Therefore, prompt disclosure of this material is required in order to determine whether these allegations should be dismissed.

## CONCLUSION

Basic justice and simple fairness requires that both sides have full and fair access to all relevant evidence far enough before trial to make proper use of it.  Because the prosecution has apparently discouraged witnesses from speaking with defense counsel, because it has explicitly taken a narrow view of its *Brady* obligations, and because it has apparently failed to preserve

---

[5] Rosalind S. Helderman, *New Invoices Bring Taxpayer-Paid Legal Bills for McDonnell Gifts Scandal to $575,000*, The Washington Post (Nov. 15, 2013), http://goo.gl/UTBbUE.

[6] Should the Court find the issue of possible misconduct in witness interviews worthy of exploration, the defense can provide the identities of witnesses to the Court *ex parte* for in camera consideration.

large quantities of evidence that was likely exculpatory, the defense seeks to involve the Court in discovery from the outset to ensure that all relevant information is fully preserved and fully disclosed.  This Motion is important and precautionary, as the defense sincerely hopes that further judicial intervention will not be necessary and that the federal government complies with its obligations by disclosing all evidence in its possession, custody, or control, as soon as is practicable.

Dated: January 21, 2014                             Respectfully submitted,


                                                    /s/ John L. Brownlee
                                                    John L. Brownlee (VSB No. 35378)
                                                    Holland & Knight LLP
                                                    800 17th Street N.W., Ste. 1100
                                                    Washington, DC 20006
                                                    Telephone: (202) 828-1854
                                                    Facsimile: (202) 955-5564
                                                    Email: john.brownlee@hklaw.com

                                                    Henry W. Asbill (*pro hac vice pending*)
                                                    Jones Day
                                                    51 Louisiana Avenue, N.W.
                                                    Washington, DC 20001
                                                    Telephone: (202) 879-3939
                                                    Facsimile: (202) 626-1700
                                                    Email: hasbill@jonesday.com

                                                    *Counsel for Governor Robert F. McDonnell*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January  21, 2014, I caused to be served a true copy of the foregoing via

electronic email on the following individual:

> AUSA Michael S. Dry
> United States Attorney's Office
> 600 E. Main Street, Suite 1800
> Richmond, Virginia 23219-2447
> Phone: (804) 819-5400
> Facsimile: (804) 771-2316
> Email: michael.s.dry@usdoj.gov

Dated: January 21, 2014                    Respectfully submitted,


/s/ John L. Brownlee
John L. Brownlee (VSB No. 35378)
Holland & Knight LLP
800 17th Street N.W., Ste. 1100
Washington, DC 20006
Telephone: (202) 828-1854
Facsimile: (202) 955-5564
Email: john.brownlee@hklaw.com

*Counsel for Governor Robert F. McDonnell*

# EXHIBIT A

---

Message

| | |
|---|---|
| From: | Jerri Fulkerson [/O=ODEX001/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=JFULKERSON] |
| Sent: | 9/2/2011 7:56:50 PM |
| To: | Jonnie Williams Sr [jonniewilliams@starscientific.com] |
| Subject: | Fwd: Contract for Benedetti & Farris |

Sent from my iPad

Begin forwarded message:

From: "Abigail Farris Rogers" <abbyfarris@bandfllc.com>
Date: September 2, 2011 3:47:23 PM EDT
To: <jfulkerson@starscientific.com>
Subject: Fw: Contract for Benedetti & Farris

I typed your name wrong. Please let me know if you got this one.

—— Original Message ——
From: Abigail Farris Rogers
To: jfulcherson@starscientific.com <jfulcherson@starscientific.com>
Sent: Fri Sep 02 12:40:37 2011
Subject: Contract for Benedetti & Farris

Jerri,

I was asked to forward this agreement so that Mr. Williams could look at it today.  It is in reference to the services to be provided by Mary Shea Sutherland.

If you would reply that you have received this email I would appreciate it!  If you have any questions, please call me at (804) 347-0481.

Abby Farris Rogers

CONFIDENTIAL TREATMENT REQUESTED



August 23, 2011

Jonnie R. Williams, Sr.
Star Scientific, Inc.
1 Starwood Lane
Manakin Sabot, VA 23103

Dear Jonnie,

We appreciate the opportunity to work with you and your company. We believe our combined unique experiences and skills will be an asset to your efforts. Mary Shea Sutherland will be the lead consultant for Star Scientific.

Benedetti & Farris (B&F) has been contracted for consulting and event planning services for your ongoing efforts. B&F will offer strategic advice, organize, manage and produce events as directed. For these services, B&F will be compensates as follows:

o  $9,000 per month for the period of October 1, 2011 to September 30, 2012.
o  In addition to fees for services, B&F will bill back expenses incurred in relations to activities under taken for Star Scientific, Inc. to include, but not limited to overnight shipping, event costs, and travel expenses.

Thank you for allowing us to work with you on these efforts. If you have any questions or concerns regarding this agreement, please do not hesitate to contact us at (804) 344-8081.

Sincerely,

Abigail Farris Rogers
Managing Partner
Benedetti & Farris, LLC

Upon acknowledgement and agreement by Jonnie R. Williams, Sr. this memo will set up the terms and conditions of the agreement between B&F and Star Scientific, Inc.

_____        _____
Benedetti & Farris                         Star Scientific, Inc.

# EXHIBIT B

Message

| | |
|---|---|
| **From:** | James Abel [james@jamesabelevents.com] |
| **Sent:** | 4/15/2011 1:56:36 PM |
| **To:** | Jonnie Williams Sr [jwilliams@starscientific.com] |
| **CC:** | MaryShea (GOV) Sutherland [maryshea.sutherland@governor.virginia.gov] |
| **Subject:** | Fwd: Nice meeting you Jonnie |

Begin forwarded message:

**From:** James Abel <james@jamesabelevents.com>
**Date:** April 15, 2011 9:54:21 AM EDT
**To:** jwilliams@starsscientific.com
**Cc:** "MaryShea (GOV) Sutherland" <maryshea.sutherland@governor.virginia.gov>
**Subject: Nice meeting you Jonnie**

Good Morning Jonnie,

It was such a please meeting you at the Union League on Wednesday evening at the McDonnell event.   Mary Shea and I had a wonderful dinner brainstorming about your launch event.   I understand you are in NY often.   I would love to set up a meeting and talk some real details as to how we can make this launch truly the most effective to your attendees.   I recently did a huge event for Stryker Orthopedics.   You probably know of them.   I am attaching some images of larger events that show the scope of what we do, and how we can brand the event for you.

Enjoy your weekend,

James Abel



CONFIDENTIAL TREATMENT REQUESTED



JWS0110000005



CONFIDENTIAL TREATMENT REQUESTED



James Abel
james@jamesabelevents.com
917.399.4552

James Abel
james@jamesabelevents.com
917.399.4552

CONFIDENTIAL TREATMENT REQUESTED

JWS0110000007

# EXHIBIT C

**Brownlee, John L (NVA - X78053)**

| | |
|---|---|
| **From:** | Dry, Michael (USAVAE) [Michael.S.Dry@usdoj.gov] |
| **Sent:** | Thursday, October 31, 2013 11:59 AM |
| **To:** | Brownlee, John L (NVA - X78053); Aber, Jessica D. (USAVAE); Faulconer, Ryan (USAVAE) |
| **Cc:** | Small, Daniel I (MIA - X27788 - BOS - X71453); mepowers@JonesDay.com; carberry@JonesDay.com; Taylor, Timothy J (NVA - X78660); njfrancisco@jonesday.com; hasbill@jonesday.com |
| **Subject:** | RE: Requests |

John,

Please explain your theory regarding exactly how the attached document is "obvious *Brady* material" so that we can better assess your request.

Respectfully,

Mike

---
**Michael S. Dry**
Deputy Chief of the Criminal Division
United States Attorney's Office
Eastern District of Virginia

600 East Main Street, Suite 1800
Richmond, Virginia 23219
(804) 819-5502
(804) 771-2316 (fax)
michael.s.dry@usdoj.gov

---

**From:** john.brownlee@hklaw.com [mailto:john.brownlee@hklaw.com]
**Sent:** Thursday, October 31, 2013 11:56 AM
**To:** Dry, Michael (USAVAE); Aber, Jessica D. (USAVAE); Faulconer, Ryan (USAVAE)
**Cc:** dan.small@hklaw.com; mepowers@JonesDay.com; carberry@JonesDay.com; Timothy.Taylor@hklaw.com; njfrancisco@jonesday.com; hasbill@jonesday.com
**Subject:** Requests

Michael - Yesterday, in light of the obvious *Brady* material we received regarding Mr. Williams and Ms. Sutherland, we request that you provide us with the following documents and information by Monday morning, November 4th. We will need time to review these records and information before our meeting with the U.S. Attorney scheduled for November 6th.

Thanks, John

-----------------------------------------------------------------

1.  Please let us know if Ms. Sutherland was granted immunity or some other type of plea deal with regard to her conduct referenced in the attached records.
2.  Please let us know if Mr. Williams' immunity deal extends to conduct referenced in the attached records.
3.  All emails and text messages between Ms. Sutherland and Mr. Jonnie Williams.
4.  All emails and text messages between Ms. Sutherland and Ms. Abigail Farris Rogers.
5.  All emails and text messages between Ms. Sutherland and Mr. Thomas Benedetti.
6.  All emails and text messages between Ms. Jerri Fulkerson and Ms. Abigail Farris Rogers.
7.  All emails and text messages between Mr. Williams and Ms. Abigail Farris Rogers.
8.  All 302s, plus the rough notes, for interviews with Mary Shea Sutherland and a copy of her Grand Jury testimony.

9.  All 302s, plus the rough notes, for interviews with Jonnie Williams and a copy of his Grand Jury testimony.

10. All 302s, plus the rough notes, for interviews with Abigail Farris Rogers and a copy of her Grand Jury testimony.

11. All 302s, plus the rough notes, for interviews with Thomas Benedetti and a copy of his Grand Jury testimony.

12. All 302s, plus the rough notes, for interviews with Jerri Fulkerson and a copy of her Grand Jury testimony.

13. All documents and communications relating to Ms. Sutherland's attendance at a meeting on Gibson Island with Mr. Williams in July, 2011.

14. All documents and communications relating to Ms. Sutherland's lunch with Mr. Williams on or about August 17, 2011.

15. All documents and communications relating to the negotiations between Mr. Williams and Ms. Sutherland in 2011 for the contract to pay for Ms. Sutherland's services.

16. All documents and communications between Ms. Sutherland and Mr. Williams and/or anyone at Star Scientific regarding the Virginia Researchers Lunch in August, 2011.

17. Any documents and communications relating to Ms Sutherland's and/or Mr. Williams' efforts to hide any or all of the matters described in # 13-16 above.

18. Please let us know if the conduct referenced in the attached records was included in your Prosecution memorandum submitted to the U.S. Attorney or any officials at Main Justice.

19. Please let us know if the conduct referenced in the attached records was presented to the Grand Jury in Richmond.

**John Brownlee | Holland & Knight**
Chair, National White Collar Defense and Investigations Practice
800 17th Street N.W., Suite 1100 | Washington DC 20006
1600 Tysons Blvd., Suite 700 | McLean, Virginia 22102
Phone 202.828.1854 | Mobile 202.309.0722
john.brownlee@hklaw.com | www.hklaw.com

Add to address book | View professional biography

****<u>IRS CIRCULAR 230 DISCLOSURE</u>: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN BY HOLLAND & KNIGHT LLP TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE, OR (II) PROMOTING, MARKETING, OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTER HEREIN.****

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **V.** | ) **CRIMINAL NO.** <u>3:14cr12</u> |
| | ) |
| **ROBERT F. MCDONNELL** | ) |
| **MAUREEN G. MCDONNELL** | ) |

## [PROPOSED] ORDER

Upon consideration of Defendant Robert F. McDonnell's Motion for expedited discovery of all relevant exculpatory and impeachment evidence in the Department of Justice's possession, custody, or control and the memoranda filed in support thereof, it is hereby

**ORDERED** that the Motion is **GRANTED**.  It is further **ORDERED** that within fourteen days of the entry of this Order, the Department of Justice shall produce to the Defense all relevant exculpatory and impeachment evidence in its possession, custody, or control.

## IT IS SO ORDERED.

Dated:_____                    _____

United States District Judge